IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

LISA SIMPSON,
Plaintiff,

v.

Case No. 22–cv–00483–JPG–1

REVCO SOLUTIONS, INC.,
Defendant.

## MEMORANDUM AND ORDER

### I.     Introduction

This matter comes before the Court on Defendant Revco Solutions, Inc. ("Revco" or "Defendant") Motion to Dismiss this case pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). (Doc. 22). Specifically, Revco argues that Plaintiff Lisa Simpson ("Simpson" or "Plaintiff"), who brings this case under the Fair Debt Collection Practices Act ("FDCPA"), lacks Article III standing and fails to state a claim under the FDCPA. Simpson filed a response and opposition (Doc. 26). Additionally, citing exceptional circumstances, Revco filed a reply (Doc. 27).

### II.    Factual and Procedural Background

Revco is a debt collection company with its principal office in South Carolina. Revco regularly collects or attempts to collect debt after they are in default. (Doc. 21 at ¶¶ 6, 8). Simpson incurred debt after being in default. *Id*. at ¶¶ 5, 7.

On April 9, 2021, Simpson alleges her attorneys sent a letter to Revco notifying them of their representation of Simpson[1]. *Id*. at ¶ 11. Revco allegedly sent Simpson another notice after attorney representation notification. Simpson contends that after being notified about her debt after

---

[1] Revco denies receiving this letter of notice of representation.

1

her representation by an attorney, Revco violated FDCPA §§ 1692c(a)(2), 1692e and 1692f. *Id*. at ¶¶ 13, 20, 22, 24.

Plaintiff alleges as a proximate result of Revco's actions, Simpson suffered "actual financial harm and monetary losses," and as a result of Revco's misleading statements, Simpson impacted her choice on how to proceed by forcing her to retain legal representation. *Id*. at ¶¶ 14-15. Plaintiff alleges that as a result of Revco's actions, she bore harm that has a close relationship to "invasion of privacy, abuse of process, intentional infliction of emotional distress, and negligent misrepresentation." *Id*. at ¶ 16. As a result, Plaintiff indicates she suffered "undue stress and anxiety." *Id*. at ¶ 17. Additionally, Plaintiff states she detrimentally relied on Revco's misleading statements and suffered "confusion, wasted time, annoyance, emotion [sic] distress, monetary loss, and informational injuries that satisfies the concreteness requirement for injury in fact of Article III." *Id*. at ¶ 18.

Simpson filed her complaint in this Court on March 9, 2022 (Doc. 1). On May 13, 2022, Revco filed a motion to dismiss on the basis of Rule 12(b)(6) and lack of jurisdiction. (Doc. 18). In response, Simpson filed an Amended Complaint (Doc. 21). Simpson's amended complaint has three counts: (1) violation of 15 USC § 1692c(a)(2) for communicating with a consumer after having notice of attorney representation; (2) violation of 15 USC § 1692e for engaging in false deceptive, or misleading methods to collect a debt; and (3) a violation of 15 USC § 1692f for engaging in unfair and/or unconscionable means to collect, or attempt to collect the debt. Revco filed a motion to dismiss on the same bases as previously, and both parties filed their briefs on the operative motion. (Docs. 22, 26, 27). The parties filed a motion to stay the case and the discovery deadlines while the Court rules on the pending motion. (Doc. 28). The Court granted that motion and stayed all deadlines. (Doc. 29). The Court now turns to the specifics of this case.

### III.   Analysis

Revco has moved to dismiss all Plaintiffs' claims pursuant to Rule 12(b)(1) for lack of subject-matter jurisdiction and Rule 12(b)(6) for failure to state a claim. To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This pleading standard does not necessarily require a complaint to contain detailed factual allegations. *Twombly*, 550 U.S. at 555. Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678).  The same plausibility standard applies under Rule 12(b)(1). *Silha v. ACT, Inc.*, 807 F.3d 169, 174 (7th Cir. 2015) (Court must determine if complaint's allegations "plausibly suggest a claim of subject[-]matter jurisdiction" in reviewing Rule 12(b)(1) motion).

Congress passed the FDCPA to "eliminate abusive debt collection practices, to ensure that debt collectors who abstain from such practices are not competitively disadvantaged, and to promote consistent state action to protect consumers." *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 577 (2010). "To show a violation of the FDCPA, the plaintiff must show (1) that the plaintiff is a 'consumer' within the meaning of the statute; (2) that the defendant collecting the debt is a 'debt collector' within the meaning of the statute; and (3) that the defendant has violated the FDCPA by act or omission." *Anderson v. Leading Edge Recovery Sols., LLC*, 2012 WL 4506012, at *4 n.1 (S.D. Ill. Sept. 30, 2012).

    a. **Article III Standing**

To establish standing to sue in federal court, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). This case concerns the injury-in-fact requirement, which is the "[f]irst and foremost" of standing's three elements. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998). The injury-in-fact inquiry "asks whether the plaintiff has suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Fox v. Dakkota Integrated Sys., LLC*, 980 F.3d 1146, 1151–52 (7th Cir. 2020). A concrete injury "must actually exist" and must be "real and not abstract." *Spokeo, Inc.*, 578 U.S. at 340. The injury analysis often occurs at the pleading stage, where we are limited to the complaint's "general factual allegations of injury resulting from the defendant's conduct" to evaluate standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).

In *Spokeo*, the Supreme Court held that "Article III standing requires a concrete injury even in the context of a statutory violation." 578 U.S. at 341. The Seventh Circuit has repeatedly held that a breach of the FDCPA "does not, by itself, cause an injury in fact." *Markakos v. Medicredit, Inc.*, 997 F.3d 778, 779–80 (7th Cir. 2021). Even where the statutory violation is considered substantive and not merely procedural, a plaintiff must allege a concrete injury. *Larkin v. Fin. Sys. of Green Bay, Inc.*, 982 F.3d 1060, 1066 (7th Cir. 2020) (holding plaintiff alleged no harm from the statutory violation and therefore lacked standing, despite alleging that statements in the collection letters were false, deceptive, or misleading). Though "traditional tangible harms, such as physical harms and monetary harms," most readily qualify as concrete injuries, "[v]arious

intangible harms can also be concrete." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2204, 210 L.Ed.2d 568 (2021). "Chief among [intangible concrete harms] are injuries with a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts." *Ramirez*, 141 S. Ct. at 2205. When determining if a statutorily identified, intangible harm has a close-but-not-exact match in American history or at common law, we look to the kind of injury the statute protects, not the degree of harm suffered. *Ewing v. MED-1 Sols., LLC*, 24 F.4th 1146, 1151 (7th Cir. 2022).

Such alleged violations of the FDCPA where defendants disagree plaintiffs have alleged concrete harms have been common and plentiful within the Seventh Circuit. Because Simpson alleges intangible harms, the Court will take each of them in turn. Specifically, Simpson alleges financial harm, monetary losses, impact regarding her choice to retain legal counsel, harm with a close relationship to invasion of privacy, abuse of process, intentional infliction of emotional distress, and negligent misrepresentation. Additionally, she alleges undue stress, anxiety, confusion, wasted time, annoyance, emotional distress, monetary loss, and informational injuries. (Amended Complaint, Doc. 21 at ¶¶ 14-18).

The Seventh Circuit has been clear regarding emotional harms. They do not constitute concrete injury.

> As our bevy of recent decisions on FDCPA standing makes clear, *anxiety* and *embarrassment* are not injuries in fact. Indeed, we have expressly rejected "*stress*" as constituting concrete injury following an FDCPA violation. Likewise, it is not enough for a plaintiff to be "*annoyed*" or "intimidated" by a violation. Nor is it enough for a plaintiff to experience "infuriation or disgust" or "a sense of indignation." Likewise, a plaintiff's "*state of confusion*" resulting from an FDCPA-deficient communication, without any ensuing detriment, is not a concrete injury for if it were, then everyone would have standing to litigate about everything. These are quintessential abstract harms that are beyond our power to remedy.

*Wadsworth v. Kross, Lieberman & Stone, Inc.*, 12 F.4th 665, 668 (7th Cir. 2021) (internal citations omitted) (emphasis added). Therefore, in line with circuit precedent, and a long line of recent decisions regarding FDCPA harms, the Court finds Simpson's harms for undue stress, anxiety, confusion, annoyance, and emotional distress do not amount to a concrete injury to satisfy Article III standing. While such harms may be concrete, such as when stress or anxiety manifests itself physically, Simpson does not allege that here. *Pennell v. Glob. Tr. Mgmt., LLC*, 990 F.3d 1041, 1045 (7th Cir. 2021) ("Nor does stress by itself with no physical manifestations and no qualified medical diagnosis amount to a concrete harm"); *United States v. All Funds on Deposit with R.J. O'Brien & Assocs.*, 783 F.3d 607, 616 (7th Cir. 2015) (noting that "purely psychological harm" does not suffice to establish Article III standing); *Pierre v. Midland Credit Mgmt., Inc.*, 29 F.4th 934, 939 (7th Cir. 2022) ("Confusion, we have held, is not a concrete injury in the FDCPA context."). Additionally, for such psychological harms to be concrete, plaintiff must have acted "to her detriment, on that confusion." *Brunett v. Convergent Outsourcing, Inc.*, 982 F.3d 1067, 1068 (7th Cir. 2020). Because Simpson falls short of alleging a physical manifestation of an emotional injury, or how she acted to her detriment based on psychological harm, Simpson's emotional harms do not constitute concrete harm to establish Article III standing.

Next, the Court evaluates Simpson's claims of financial harm and monetary losses. Specifically, Simpson's allegation regarding her financial harm is the following: "As a direct and proximate result of the Defendant's actions, Plaintiff suffered actual financial harm and monetary losses." (Doc. 21 at ¶ 14). While such financial or monetary harms are "easier to recognize" because they are tangible, such harms must not be vague. *Spokeo*, 136 S. Ct. at 1548. Courts within this circuit have held "vague" references to financial harm causes by defendant's conduct does not demonstrate a concrete injury. *Hall v. Altus Legal, LLC*, No. 20-cv-5539, 2021 WL 4243510, at

\*2 (N.D. Ill. Sept. 17, 2021) ("The complaint merely makes vague reference to emotional distress, embarrassment, reputational damage, and *financial harm* caused by defendant's conduct) (emphasis added); *Gilbert v. TrueAccord Corp.*, No. 21-cv-485, 2022 WL 2257126, at \*5 (N.D. Ill. June 23, 2022) (no standing for monetary loss where plaintiff not put forth evidence such as incurring financial harm other than debt such as food, toiletries, and drinks); *Cf Lueck v. Bureaus, Inc.*, No. 20-cv-2017, 2021 WL 4264368, at \*2 (N.D. Ill. Sept. 20, 2021) (allegation that defendant's misrepresentations caused a material decrease in her credit score suffices a real risk of financial harm to satisfy cause-in-fact); *Evans v. Portfolio Recovery Assocs., LLC*, 889 F.3d 337, 345 (7th Cir. 2018) (plaintiffs who suffered a real risk of financial harm caused by an inaccurate credit rating had standing). Simpson's amended complaint similarly is vague and does not provide this Court well-pleaded allegations to find concrete tangible economic harm. Simpson's allegation, that the Court quoted above, is devoid of any factual or well-pleaded allegations that could provide a basis to this Court to find standing based on a tangible economic harm. Therefore, Simpson's monetary or financial harm do not constitute concrete harm to establish Article III standing.

Next, Simpson argues that she expended time and money consulting a lawyer, which establishes Article III standing. Courts within this circuit have also addressed this type of harm and determined it does not confer a concrete harm. *Brunett*, 982 F.3d at 1069 ("A desire to obtain legal advice is not a reason for universal standing."); *see also Smith v. GC Servs. Ltd. P'ship*, 986 F.3d 708, 710 (7th Cir. 2021) (detrimental step could be "paying money [a plaintiff] did not owe"); *Johnson v. Heuer Law Offs., S.C.*, No. 19-cv-1171, 2021 WL 1139800, at \*6 (E.D. Wis. Mar. 25, 2021) (no concrete harm from hiring an attorney because that decision was not "detrimental to her interests" but instead was done to "represent her best interests"); *Gilbert*, No. 21-cv-485 at \*5 ("plaintiff has put forth no evidence that she lost time in any manner other than in discussions with

her attorney, so she has not established standing on a loss of time."). The Court understands that taking time to get an attorney to obtain legal advice and potentially file suit can be costly. The Seventh Circuit in *Gunn* says it aptly.

> Indeed, it is hard to imagine that anyone would file any lawsuit without being annoyed (or worse). Litigation is costly for both the pocketbook and peace of mind. Few people litigate for fun. Yet the Supreme Court has never thought that having one's nose out of joint and one's dander up creates a case or controversy. No one can doubt that the plaintiff in *Spokeo* was sore annoyed. If that were enough, however, then the very fact that a suit had been filed would show the existence of standing, and the need to have a concrete injury that could be cured by a favorable judicial decision would be abolished.

*Gunn v. Thrasher, Buschmann & Voelkel, P.C.*, 982 F.3d 1069, 1072 (7th Cir. 2020). Simpson's allegations of harm related to her wasted time to get an attorney does not confer standing. Litigation, and consulting a lawyer, is a cost in any litigation and this Court, in line with cases within this circuit, finds it is not enough to show the existence of standing.

Simpson argues that standing could be conferred on her based common law claims. Specifically, Simpson argues that Plaintiff's notice of representation "is a demand for privacy that is akin to a 'Do Not Disturb' notice on a hotel room" and therefore sufficiently pleads a harm that "closely resembles the common law right of privacy that Congress sought to address with the FDCPA. (Doc. 26 at 6).

It is well-established that "[v]iolations of rights of privacy are actionable." *Gubala v. Time Warner Cable, Inc.*, 846 F.3d 909, 912 (7th Cir. 2017). But the Seventh Circuit recently clarified that analogy to a broad category of tort, such as "invasion of privacy," is not enough to show that an alleged harm has a close relationship to an action at common law. *See Persinger v. Sw. Credit Sys., L.P.*, 20 F.4th 1184, 1191–92 (7th Cir. 2021). Instead, the alleged harm must have a close relationship to a specific "theor[y] of wrongdoing." *Id.* at 1192. The Seventh Circuit indicated there are four traditional categories that encompass the invasion of privacy: intrusion upon

seclusion, appropriation of a person's name or likeness, publicity given to private life, and publicity placing a person in a false light. *Id*. (citing Restatement (Second) of Torts §§ 652A–652E (1977)). Here, Simpson does not identify which specific tort she likens her harm to, yet Revco states the former three are inapplicable. (Doc. 27 at 3). Revco argues this only leaves intrusion upon seclusion as a possible of privacy harm. *Id*. The Court agrees with Revco that the allegations in Plaintiff's amended complaint are possibly most closely related to an intrusion upon seclusion tort and are possibly most closely to the "Do Not Disturb" analogy Simpson provides.

The question therefore is whether the receipt of Revco's letter[2] to Simpson after being notified she was represented by an attorney is analogous to an intrusion upon seclusion for standing. *Spokeo* and *Ramirez* make clear our responsibility to look for a close relationship "in kind, not degree." *See Gadelhak*, 950 F.3d at 462. Simpson does not have to prevail in a lawsuit for common law invasion of privacy to demonstrate standing. *Id*. For this case, intrusion upon seclusion is the best comparator, which occurs when a person "intrudes ... upon the solitude or seclusion of another or his private affairs or concerns" and this "intrusion would be highly offensive to a reasonable person." Restatement (Second) of Torts §§ 652B. Under *Ramirez*, we do not look for an "exact duplicate," we look for a "close relationship." *Ramirez*, 141 S. Ct. at 2209.

Is a letter sent after being notified of Simpson's counsel an intrusion on an individual's private affairs, and highly offensive to a reasonable person? The Court looks to what contours the Seventh Circuit has laid out. In *Gadelhak*, the Seventh Circuit held that receiving "unwanted text messages" is analogous to an intrusion of invasion of privacy. 950 F.3d at 462–63. Revco argues

---

[2] Simpson's amended complaint also indicates that after the letter, "Defendant communicated with Plaintiff at least one (1) time thereafter." (Doc. 21 at ¶ 12). This is vague and does not even provide the method of communication. This Court will not guess what type of communication there was and Simpson's response does not shed light on what kind of communication there was. Finding that this allegation is too vague in the amended complaint, and Plaintiff has not provided any additional information in its response, the Court does not give this allegation much weight.

9

that a mere receipt of letter could not be highly offensive to a reasonable person. (Doc. 27 at 3). The Court agrees. The Court finds that the cases within this circuit indicate a letter after advisement of lawyer representation does not point to an intrusion upon seclusion. In fact, other cases point to types of communication that are particularly intrusive into an individual's private life. *See Gadelhak*, 950 F.3d at 462 n. 1 ("This is different in kind than unwanted text messages or phone calls. The undesired buzzing of a cell phone from a text message, like the unwanted ringing of a phone from a call, is an intrusion into peace and quiet in a realm that is private and personal."); *Gunn v. Thrasher, Buschmann & Voelkel, P.C.*, 982 F.3d 1069, 1071 (7th Cir. 2020) ("Pestiferous text messages, spam phone calls, and unwelcome faxes can cause cognizable injury, for the reasons we gave in *Gadelhak* when explaining how the common law treats noises and other aggravating intrusions."). Additionally, Plaintiff has not cited a case where a single letter, such as the one in this case, and the Court is unable to find one.

Specifically, Simpson argues that the Seventh Circuit decision in *Ewing* is instructive. In *Ewing*, a debt collector failed to notify a credit-reporting agency that the plaintiffs had disputed the debts in question. *Ewing*, 24 F.4th at 1154. There was evidence that the statutory violations caused the plaintiffs' credit scores to decline. *Id*. The Seventh Circuit reasoned that the incomplete reporting worked a harm analogous to that associated with common-law defamation. *Id*. at 1153–54. That "intangible, reputational injury [was] sufficiently concrete for purposes of Article III standing." *Id*. at 1154. However, the same harm is not present here. Simpson does not allege any related harm to credit scores or incomplete reporting. This case, while provides helpful contours in the caselaw within the Seventh Circuit after *Ramirez*, does not change this Court's finding that Simpson does not provide allegations analogous or closely related to a privacy tort.

Simpson analogizes this case to *Lupia v. Medicredit*, 445 F. Supp. 3d 1271 (D. Colo. 2020). In *Lupia*, the district court in Colorado stated that Lupia demonstrated standing related to a phone call she received (which she did not answer and ultimately left a voicemail) telling she had debt and to contact their office if she had any questions or concerns. *Id*. This Court does not find Lupia persuasive or controlling. Specifically, *Lupia* found that a "risk that those [privacy] interests will be harmed by practices made illegal under the FDCPA is sufficiently real and concrete to satisfy the injury-in-fact requirement of standing." *Id*. at 1280. However, in *Ramirez*, decided after *Lupia*, the Supreme Court was clear that "the *risk of future harm* on its own does not support Article III standing for the plaintiffs' damages claim." *Ramirez*, 141 S. Ct. at 2213 (emphasis added). Additionally, *Lupia* dealt with a phone call and voicemail, which is similar to the type of cases that the Seventh Circuit has determined intrudes into the peace and quiet of private and personal, instead of a letter like the case at hand.

There is an abundance of case law within this circuit that shows the contours of what constitutes Article III standing and satisfies the concreteness requirement. This case does not fit the reasoning or type of cases where the Seventh Circuit has held there is concrete harm. Being informed of an outstanding debt can sometimes be a stressful experience, but federal courts may entertain FDCPA claims only when the plaintiff suffers a concrete harm that she would not have incurred had the debt collector complied with the Act. *Wadsworth v. Kross, Lieberman & Stone, Inc.*, 12 F.4th 665, 669 (7th Cir. 2021).

Plaintiff lacks standing with respect to Counts I, II, and III, so Simpson's case is dismissed. Dismissals for lack of jurisdiction are dismissals without prejudice. *Prairie Rivers Network v. Dynegy Midwest Generation, LLC*, 2 F.4th 1002, 1013 (7th Cir. 2021).

### b. Failure to State a Claim Upon Which Relief May be Granted

Next, Revco argues that Simpson's Amended Complaint fails under Rule 12(b)(6) for failure to state a claim under Section 1692c(a)(2). (Doc. 23 at 11).

To reach the merits of a case, an Article III court must have jurisdiction." *Va. House of Delegates v. Bethune-Hill*, 139 S. Ct. 1945, 1950, 204 L.Ed.2d 305 (2019). "One essential aspect of this requirement is that any person invoking the power of a federal court must demonstrate standing to do so." *Hollingsworth v. Perry*, 570 U.S. 693, 704, 133 S.Ct. 2652, 186 L.Ed.2d 768 (2013). Because this Court has held that Simpson does not have standing to pursue her claim, this Court will not reach the merits of her case under Rule 12(b)(6).

### IV. Conclusion

For the reasons explained above, the Court finds that Simpson lacks Article III standing to pursue their claims. Having so found, the Court need not consider whether Simpson's amended complaint would also fail under Rule 12(b)(6). The Court **GRANTS** Revco's motion to dismiss (Doc. 22) and dismisses the complaint without prejudice for lack of jurisdiction.

**IT IS SO ORDERED.**
**Dated: December 12, 2022**

/s/  J. Phil Gilbert
**J. PHIL GILBERT**
**DISTRICT JUDGE**